DIAZ, J., for the Court.
¶ 1. This matter is before this Court on appeal from a Final Judgment of the Chancery Court of Adams County, Mississippi, which denied A.W.’s Petition of an Unemancipated Minor for Waiver of Parental Consent to Abortion. A.W., the minor, filed her petition in the chancery court on December 7, 2001. A hearing was held on December 7, 2001, and later that day, the chancery court entered a Final Judgment which included its findings of fact and conclusions of law. On December 13, 2001, pursuant to Mississippi Rule of Appellate Procedure 48, this Court issued an order affirming the decision of the chancellor. This Court found that the record supported the chancellor’s ultimate findings that A.W. was not mature and well-informed enough to make the abortion decision on her own and that the performance of the abortion would not be in her best interest. In this opinion we explain, in greater detail, the reasons for the affir-mance of the judgment below.

FACTS

¶ 2. This Court adopts the following findings of fact by the trial court:
A.W. is a minor child, age 17, born June 28, 1984. Her mother died of cancer five years ago, and she does not know or have a relationship with her father. A.W. has lived with her maternal aunt since her mother’s death; however, she is under the belief that her aunt has never been made her legal guardian.
A.W. has one younger sister who was born with down syndrome. Her younger sister does not live with A.W. and her aunt.
A.W. is an honor student. She has plans to start college in the Fall in the year 2002.
Last Saturday, A.W. confirmed by a test performed at the New Woman Abortion Clinic in Jackson that she is about 6 weeks pregnant. She met with a counselor at the abortion clinic and has read pamphlets to familiarize herself with the abortion procedure. She also spoke with some one at the medical center about the option of adoption.
¶ 3. According to the record, AW.’s aunt supported her decision but would not consent to the abortion for fear of being excommunicated from her church. AW.’s aunt did not appear as a witness at the hearing. The chancellor found that A.W. was not mature and well-informed enough to make the abortion decision on her own. Furthermore, the chancellor found that A.W.’s decision was based primarily on fear. He concluded that the abortion was not in the best interest of A.W.
¶ 4. A.W. testified that she believed having a baby would interfere with her plans for college. She testified that she considered adoption but believed she would not be able to give the baby up for adoption, since she had lost her own mother. She also feared that the baby was at high risk of having Down’s syndrome or cancer; however, she presented no medical evidence to support her fears. She stated that she had thoughts of suicide due to the *1282 pregnancy, and she believed she was incapable of bringing a child into the world due to her emotional instability. She showed the chancellor scars where she cut herself several years earlier after the death of her mother. However, the chancellor found no evidence of a threat or attempt of suicide.
¶ 5. The sole issue before this Court is whether A.W. should be allowed to have an abortion without obtaining the consent of her parent or legal guardian.

DISCUSSION

¶ 6. Mississippi generally requires prior written parental consent to an abortion performed upon an unemancipated minor. Miss.Code Ann. § 41-41-58 (2001). However, pursuant to Miss.Code Ann. § 41-41-55(4) (2001):
Consent shall be waived if the court finds either:
(a) That the minor is mature and well-informed enough to make the abortion decision on her own; or
(b) That performance of the abortion would be in the best interests of the minor.
This Court has found that these waiver of consent requirements, which must be met before an unemancipated minor may have an abortion without parental consent, are constitutional. Pro-Choice Miss. v. Fordice, 716 So.2d 645 (Miss.1998).
¶ 7. This Court employs a limited standard of review in these cases: if there is substantial evidence in the record supporting the chancery court’s findings of fact, this Court will seldom reverse, whether those findings are of ultimate fact or evidentiary fact. In re R.B., 790 So.2d 880, 832 (Miss.2001). The sole duty'of this Court is to determine if the evidence substantially- supports the chancellor’s decision, not to ponder the morality or constitutionality of abortion. Id. In addition, the chancery court as the trier of fact has the primary authority and responsibility to assess the credibility of witnesses. Id. The chancellor’s findings will be upheld unless they are clearly erroneous. Id.
¶ 8. In R.B., this Court affirmed the chancellor, finding that a 17-year-old minor had failed to demonstrate that she was mature and well-informed enough to make an abortion decision on her own and failed to show that termination of the pregnancy would be in her best interest. Her parents were deceased, and the minor lived with her grandmother who had physical but not legal custody of the minor. As with the aunt in the case sub judice, the grandmother also supported the minor’s decision in R.B.
¶ 9. Just as this Court held in R.B., this Court finds that in the case sub judice the chancellor carefully considered the evidence before him. The chancellor asked detailed questions at the hearing concerning the nature of AW.’s decision. Among other probing questions as to her feelings that contributed to her decision, she was asked about the possibility of adoption, about her fear that she might commit suicide, and about her fear that the baby might be born with Down’s syndrome or cancer. The chancellor ultimately found that the A.W. was simply afraid of the responsibility of motherhood. This Court will not second guess the chancellor where the record supports the chancellor’s findings and the chancellor was in the best position to evaluate the maturity level of A.W.
¶ 10. The dissents in R.B. noted that R.B.’s grandmother testified that she approved of R.B.’s decision, although she lacked the requisite legal capacity to consent. Here, the aunt, for religious reasons, would not testify and would not consent, although according to A.W., her aunt did, nevertheless, support A.W.’s decision. Either way, neither the aunt here nor the *1283 grandmother in R.B. had the apparent legal capacity to consent to the abortion.
¶ 11. The chancellor, therefore, was left to determine whether A.W.’s decision was a mature and well-informed decision and whether the decision was in her best interest. The chancellor found that A.W. did not meet the statutory waiver of consent requirements. This Court finds no clear abuse of discretion in the chancellor’s findings of fact and ultimate conclusions.

CONCLUSION

¶ 12. The chancellor did not abuse his discretion, and his ruling is upheld. For these reasons, we affirm the judgment of the chancery court.
¶ 13. AFFIRMED.
PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., NOT PARTICIPATING.