# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CP-01101-COA

**SOWETO RONNELL LOVE A/K/A SOWETO LOVE**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

DATE OF JUDGMENT:              08/27/2021
TRIAL JUDGE:                         HON. GERALD W. CHATHAM SR.
COURT FROM WHICH APPEALED:  TATE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       SOWETO RONNELL LOVE (PRO SE)
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                        BY: LAUREN GABRIELLE CANTRELL
NATURE OF THE CASE:             CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                      AFFIRMED - 07/18/2023
MOTION FOR REHEARING FILED:

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Soweto Love appeals from the dismissal of his motion for post-conviction collateral relief (PCR). Finding no reversible error, we affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2018, Love was indicted for conspiracy to obtain a controlled substance by fraud (Count I); attempt to acquire or obtain possession of a controlled substance by forged prescription (Count II); two counts of acquiring or obtaining a controlled substance by forged prescription (Counts III and IV); and two counts of possession of a false, fraudulent, or forged prescription of a practitioner (Counts V and VI). The indictment was amended to charge Love as a nonviolent habitual offender and as a second or subsequent drug offender.

¶3. In 2019, Love entered a petition to plead guilty to Counts II and III of the indictment. The plea petition stated, "I plead guilty to the charge(s) of Forged Prescription - 2 counts in violation of Miss. Code Ann. § 41-29-144, as set forth in count[s] 2, 3 of the indictment in this cause number." The petition also stated:

> My lawyer has informed me as to the maximum and minimum punishment which the law provides for the offense charged in the indictment. The maximum punishment which the [c]ourt may impose for this crime that I am charged with is 5 years imprisonment [on each count] and $1,000.00 fine [on each count]. The minimum punishment is 1 years imprisonment [on each count] and/or $0 fine [on each count]. . . .[1]

In the petition, Love acknowledged that he had been previously convicted of "possession with intent" and "possession of [a] controlled substance by fraud." The petition stated:

> I understand that if [I] have now been convicted of two (2) or more felonies upon charges separately brought and arising out of separate incidents at different times and have been sentenced to separate terms of one (1) year or more in any state and/or Federal prison institution, that if I am convicted of another felony, then I may be sentenced to the maximum term of imprisonment prescribed for such felony and such sentence shall not be reduced or suspended nor will I be eligible for parole or probation or other earned or good time.

Finally, the petition stated:

> I do understand that no one can assure me of parole or early release. Certain crimes make a Defendant ineligible for parole. These include, but are not limited to, sex crimes, armed robbery and defendants who are sentenced as habitual offenders. I have discussed with my attorney whether the crime for which I am charged fits into that category. I understand that this process is governed by the Legislature and the Mississippi Department of Corrections and not by this [c]ourt.

¶4. After a plea hearing, the circuit court accepted Love's plea and sentenced him as a non-violent habitual offender to serve two consecutive terms of five years in the Mississippi

---

[1] The words "each count" were handwritten on the petition.

2

Department of Corrections. The court also ordered Love to pay a $1,000 fine, $200 to the district attorney's office, $100 to the Mississippi Crime Victim's Compensation Fund, and all court costs.

¶5. In 2021, Love filed a PCR motion claiming that his guilty plea was not voluntary. Specifically, Love asserted that he was in the restroom when the circuit court found his rights had been waived and his plea voluntarily entered. He argued that there was no factual basis to establish his plea, that he did not waive his rights, and that he was not informed of the minimum and maximum sentences for each charge.

¶6. On August 27, 2021, the circuit court dismissed Love's PCR motion. While citing to relevant portions of the plea-hearing transcript, the circuit court found that Love was present throughout the plea hearing, the State established a factual basis for Love's plea, and Love understood that he was waiving his rights and understood the minimum and maximum sentences for each charge.

¶7. On September 27, 2021, Love filed a notice of appeal. In his brief, Love now claims that (1) there was no factual basis for his plea, (2) his plea was involuntary because he was "told that he would not be charged as a habitual [offender]" and that he "would [only be sentenced to] probation," (3) the circuit court erred by not allowing him to withdraw his plea, and (4) he received ineffective assistance of counsel.

**STANDARD OF REVIEW**

¶8. "When reviewing a [circuit] court's denial or dismissal of a PCR motion, we will only disturb the [circuit] court's decision if the [circuit] court abused its discretion and the

3

decision is clearly erroneous; however, we review the [circuit] court's legal conclusions under a de novo standard of review." *Green v. State*, 242 So. 3d 176, 178 (¶5) (Miss. Ct. App. 2017) (citing *Hughes v. State*, 106 So. 3d 836, 838 (¶4) (Miss. Ct. App. 2012)).

## DISCUSSION

### I. Factual Basis

¶9. Love claims that no factual basis existed for his plea. "Prior to accepting a defendant's guilty plea, the circuit court must first decide whether the plea is voluntarily and intelligently made and whether a factual basis exists to support the plea." *Taylor v. State*, 313 So. 3d 1106, 1111 (¶13) (Miss. Ct. App. 2021) (quoting *Tucker v. State*, 294 So. 3d 690, 695 (¶9) (Miss. Ct. App. 2020)). "There are many ways to establish a factual basis, including a statement of the prosecutor, the testimony of live witnesses, and prior proceedings, as well as an actual admission by the defendant." *Id*. Furthermore, "if sufficiently specific, an indictment or information can be used as the sole source of the factual basis for a guilty plea." *Id*. (quoting *Williams v. State*, 110 So. 3d 840, 843 (¶17) (Miss. Ct. App. 2013)). "To determine whether a factual basis exists, we consider the entire record." *Id*.

¶10. At the plea hearing, the circuit court asked the State for a factual basis for the charges, and the prosecutor responded:

> Yes, sir. Your Honor, in CR2018-20GCT, in Count Two, if this matter were to go to trial, the State would be prepared to prove beyond a reasonable doubt and with credible and admissible evidence that between the 26th and the 27th day of October in the year 2017 Soweto Ronnell Love, along with his codefendant Porcha Latoya Knox, did willfully, unlawfully, feloniously, knowingly, and intentionally attempt to acquire, obtain possession of a controlled substance, that substance being approximately 150 dosage units of Oxycodone, 30 milligrams, by misrepresentation, fraud, forgery, deception, or

4

subterfuge by presenting to Lori Chandler, a registered pharmacist at Fred's Pharmacy in Senatobia, Mississippi, a forged prescription.

In Count Three, Your Honor, the State would further be prepared to prove that on or about the 23rd day of September in the year 2017 Soweto Ronnell Love and Porcha Latoya Knox did again willfully, unlawfully, feloniously, knowingly, and intentionally acquire or obtain possession of a controlled substance, that substance being approximately 150 dosage units of Oxycodone, 30 milligrams, by misrepresentation, fraud, forgery, deception, or subterfuge by presenting to Lori Chandler, a registered pharmacist at Fred's Pharmacy in Senatobia, Mississippi, a forged prescription.

Additionally, the prosecutor stated:

The facts would show specifically, Your Honor, that the pharmacist at Fred's Pharmacy in Senatobia, Mississippi, Ms. Lori Chandler, contacted Senatobia Police Department to let them know that she had been tendered what she believed to be a forged or fraudulent prescription for four Oxycodone. Prior to calling the police department she had already contacted the medical personnel to determine whether or not it had, in fact, been a legitimate prescription written that had been turned over to her for filling. She gave law enforcement officers information that it was, in fact, determined that it was not a legitimate prescription and that the individual who had called it in was coming back in to pick it up. On the date that Soweto Ronnell Love and Porcha Latoya Knox returned to Fred's Pharmacy in Senatobia, Mississippi, to pick up the prescription that had been left there to be filled they were, in fact, taken into custody by Senatobia Police Department narcotics officers. During the course of the investigation they found flash drives that contained other means of printing out forged prescriptions. They found prescription pad papers. They found other prescriptions with medical information for - - to be presented for other fraudulent prescriptions to be filled. During the course of their investigation they were also able to interview Mr. Soweto Ronnell Love and he gave a full and voluntary statement regarding what he knew as to the presentation of these bogus prescriptions and the substance that was going to be collected based on those prescriptions.

These events all occurred in Senatobia, Mississippi, which is in Tate County and therefore within the jurisdiction of this court.

¶11. Afterward, Love stated that he recalled the facts and that he did not have any disagreements with the prosecutor's factual basis. Upon reviewing the record, we find that

5

a factual basis was established to support Love's plea, and the circuit court did not err by dismissing Love's PCR motion on this claim.

## II. Involuntary Plea

¶12. Next, Love claims that his plea was not voluntarily, knowingly, or intelligently entered. "A guilty plea is binding if entered voluntarily, knowingly, and intelligently." *Willis v. State*, 321 So. 3d 584, 587 (¶7) (Miss. Ct. App. 2021) (quoting *Hayes v. State*, 301 So. 3d 45, 49 (¶16) (Miss. Ct. App. 2019)). "For a guilty plea to be voluntary, knowing, and intelligent, the defendant must understand his rights, 'the nature of the charge against him, and the consequences of his plea, including applicable minimum and maximum sentences.'" *Id*. (quoting *Schmidt v. State*, 287 So. 3d 1035, 1037-38 (¶9) (Miss. Ct. App. 2019)). "The petitioner carries the burden of proving that his plea was not voluntarily, intelligently, and knowingly given." *Id*. at 588 (¶7) (quoting *Morris v. State*, 29 So. 3d 98, 102-03 (¶13) (Miss. Ct. App. 2010)).

¶13. The State asserts that this issue is procedurally barred because Love raises it for the first time on appeal. In his PCR motion, Love claimed that his plea was involuntary because he was in the restroom when the circuit court waived his rights and found that his plea had been voluntarily entered. Love argued, among other things, that "he could not have been sufficiently informed of the maximum and minimum sentences of the offenses[.]" On appeal, however, Love now claims his plea was involuntary because he was "told that he would not be charged as a habitual [offender]" and that he "would [only be sentenced to] probation." He argues that "it was impossible for the [circuit] court to find that [he]

6

understood the nature and consequences of the plea, and the maximum and minimum penalties provided by law" because it was his understanding that he would be sentenced to probation. It is true that "issues not raised below may not be raised on appeal." *Walker v. State*, 49 So. 3d 658, 659 (¶7) (Miss. Ct. App. 2010) (quoting *Austin v. State*, 971 So. 2d 1286, 1288 (¶8) (Miss. Ct. App. 2008)). "Questions will not be decided on appeal which were not presented to the [circuit] court and that court given an opportunity to rule on them." *Id*. Because Love raised the issue of the voluntariness of his plea in his PCR motion, though in a different context,[2] and the circuit court ultimately ruled on whether Love understood the minimum and maximum sentences for each charge, we will address this issue.

¶14. During the plea hearing, the following colloquy occurred:

> COURT: It looks like the maximum penalty that you could suffer for the charges that you're pleading to of forged prescription in Counts Two and Three is five years on each count and $1,000 on each count. The minimum punishment is one year on each count and zero fine on each count.
>
> Is that what you and [your attorney] have talked about?
>
> LOVE: Yes, sir.
>
> . . . .
>
> COURT: You need to understand that if you are sentenced to the Mississippi Department of Corrections for any term of years or days or months, whenever, you have no assurances of parole or early release. In other words, you may have to serve every day

---

[2] Love only asserted in his PCR motion that he was in the restroom when the circuit court found his rights had been waived and his plea voluntarily entered. On appeal, he has broadened his argument by asserting that his plea was involuntary because he was "told that he would not be charged as a habitual [offender]" and that he "would [only be sentenced to] probation."

of whatever sentence I impose on you.

Now, my question to you is, Did anyone promise you that if you'd come up here today and plead guilty that you'd be able to go down there to the penitentiary and you'd get out early or you'd make parole, and you have relied on that in entering your plea here today?

LOVE:     No, sir.

Then the circuit court judge told Love that the court "can completely reject [any sentencing agreement] and sentence [him] to the maximum as provided by law." It is well established that "declarations made under oath and in open court carry a 'strong presumption of verity.'" *Stanley v. State*, 904 So. 2d 1127, 1132 (¶12) (Miss. Ct. App. 2004) (quoting *Eacholes v. State*, 847 So. 2d 280, 281 (¶3) (Miss. Ct. App. 2003)). Additionally, in his petition to plead guilty, Love acknowledged that he had previously been convicted of two felonies. The petition explained who qualified as a habitual offender and the consequences of pleading guilty as a habitual offender. And Love acknowledged in his petition that no one could assure him of parole or early release.

¶15. Although Love did not challenge his habitual offender status in his PCR motion, the dissent asserts that the circuit court's summary dismissal of Love's PCR motion should be reversed and the cause remanded for an evidentiary hearing as to whether Love voluntarily, intelligently, and knowingly entered his guilty plea as a habitual offender, for which he was indicted. According to the dissent, "nowhere in the petition to enter a plea of guilty does Love acknowledge that he is pleading guilty as a habitual offender." *Post* at ¶25. However, in paragraph seventeen on page four of the petition, Love acknowledged that he had

previously been convicted of two felonies. The prior convictions appear to have been handwritten by Love as follows: "Possession with Intent" and "Possession of [a] controlled substance by fraud." The bottom of the page bears Love's signature. The next page of the petition, page 5, is almost entirely devoted to explaining who qualifies as a habitual offender and the consequences of pleading guilty as a habitual offender. The petition states, in relevant part:

> 19. I understand that if [I] have now been convicted of two (2) or more felonies upon charges separately brought and arising out of separate incidents at different times and have been sentenced to separate terms of one (1) year or more in any state and/or Federal prison institution, that if I am convicted of another felony, then I may be sentenced to the maximum term of imprisonment prescribed for such felony and such sentence shall not be reduced or suspended nor will I be eligible for parole or probation or other earned or good time.

> 20. I understand that if [I] have now been convicted of two (2) or more felonies upon charges separately brought and arising out of separate incidents at different times and have been sentenced and served separate terms of one (1) year or more in any state and/or Federal prison institution and one of such felonies was a crime of violence, that if I am convicted of another felony, then I may be sentenced to life imprisonment and such sentence shall not be reduced or suspended nor will I be eligible for parole or probation or other earned or good time.

Again, the bottom of the page bears Love's signature. Additionally, the dissent asserts that "there is no mention of [the recidivist] enhancement in the guilty plea petition, the guilty plea hearing or the sentencing order," which would have doubled the maximum and minimum penalties for the offenses to which Love was pleading guilty. *Post* at n.6. However, just below the paragraphs discussing habitual-offender status, the petition states:

> 21. I understand that if the offense for which I have entered my plea of guilty is a violation of the Uniform Controlled Substance Law and that, if I am convicted of another offense involving a violation of the Uniform Controlled

9

Substance Law, I will be subject to a sentence which may double the sentence which applies to my violation.

Furthermore, it does not appear that Love was ultimately sentenced as a second or subsequent drug offender under the recidivist enhancement. Finally, the plea petition contained the following provision:

As attorney for this defendant, I certify that I have on the above date discussed all the contents of the foregoing petition with said defendant, and I am satisfied that the defendant fully understands same and that the defendant executes said petition knowingly and voluntarily.

The provision was signed by Love's attorney.

¶16. The dissent states that "the circuit court took no action of record to confirm that Love knew that the indictment had been amended to charge him as a habitual offender, to confirm that Love intended to plead guilty as a habitual offender, and to confirm that he knew the consequences of entering such a plea . . . ." *Post* at ¶32. While doing so may have been the better practice, we cannot say—based on the sworn statements in Love's plea petition—that the circuit court erred by dismissing Love's PCR motion. *See Ward v. State*, 879 So. 2d 452, 454-55 (¶¶4-11) (Miss. Ct. App. 2003) (finding that the information in the guilty plea petition was sufficient to determine that the defendant's plea was not involuntary and holding that a plea petition "may be used to discredit post-plea allegations").[3] As stated, "The *petitioner* carries the burden of proving that his plea was not voluntarily, intelligently, and knowingly given." *Willis*, 321 So. 3d at 588 (¶7) (emphasis added). Love did not challenge his habitual

---

[3] This is especially so since in Love's PCR motion, he only asserted that he was in the restroom when the circuit court found his rights had been waived and his plea voluntarily entered. Additionally, Love acknowledges in his appellate brief that he was indicted as a habitual offender.

10

offender status in his PCR motion and has not proved that his plea was not voluntarily, intelligently, and knowingly entered as a habitual offender. Furthermore, the record does not reflect a "deviat[ion] from a known legal rule" or injustice to Love. *Hollingsworth v. State*, 269 So. 3d 456, 459 (¶11) (Miss. Ct. App. 2018). "Plain-error review can only be used for 'correcting obvious instances of injustice or misapplied law.'" *Id.* (quoting *Smith v. State*, 986 So. 2d 290, 294 (¶10) (Miss. 2008)).

¶17. Love's bare assertions that his guilty plea was involuntary do not overcome the detailed interrogation by the circuit court during Love's plea colloquy or Love's own sworn statements in his plea petition. *See Wood v. State*, 291 So. 3d 830, 841 (¶35) (Miss. Ct. App. 2020). We, therefore, find that Love has failed to show that his guilty plea was involuntary, and we find that the circuit court did not err by dismissing Love's PCR motion on this claim.

### III. Withdrawal of Plea

¶18. Next, Love suggests on appeal that the circuit court erred by not permitting him to withdraw his plea. Specifically, Love argues that the circuit court should not have imposed a sentence because he did not admit to committing the crimes and did not wish to plead guilty.

¶19. We agree with the State's assertion that this claim is procedurally barred. As discussed, "issues not raised below may not be raised on appeal." *Walker*, 49 So. 3d at 659 (¶7) (quoting *Austin*, 971 So. 2d at 1288 (¶8)). Love did not present this issue to the circuit court in his PCR motion; therefore, the issue is waived. *Id.*[4]

---

[4] At the plea hearing, Love admitted that he was guilty of Counts II and III and asked the circuit court to accept his plea. The State later filed a motion to supplement the appellate

## IV. Ineffective Assistance of Counsel

¶20. Finally, Love suggests that he received ineffective assistance of counsel. Because Love did not present this issue to the circuit court in his PCR motion, we will not consider it. *Id.*; *see also Lovett v. State*, 270 So. 3d 133, 136 (¶12) (Miss. Ct. App. 2018) (The appellant's additional issues not presented in his PCR motion were barred on appeal.). Additionally, in his reply brief, Love suggests that he was deprived of his right to counsel. However, "[w]e will not consider issues raised for the first time in an appellant's reply brief." *Nelson v. State*, 69 So. 3d 50, 52 (¶8) (Miss. Ct. App. 2011) (quoting *Sanders v. State*, 678 So. 2d 663, 669-70 (Miss. 1996)).

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., LAWRENCE AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, P.J., WESTBROOKS AND McCARTY, JJ.; McDONALD, J., JOINS IN PART.**

**EMFINGER, J., DISSENTING:**

¶22. The majority affirms the circuit court's dismissal of Love's motion for post-conviction collateral relief (PCR). Because I would reverse and remand this matter to the circuit court for an evidentiary hearing as to Love's claim that his pleas of guilty were not

---

record with the sentencing-hearing transcript. According to the State, "Love . . . appear[ed] to argue [in his appellate brief] that during the sentencing hearing he told the trial court that (1) he wished to withdraw his guilty plea prior to sentencing, and (2) he was informed 'he would not be charged as a habitual and would get probation.'" On September 1, 2022, a three-judge panel entered an order denying the State's motion to supplement the record, noting that the circuit court had not relied upon the sentencing transcript in dismissing Love's PCR motion. As discussed, the circuit court was not presented with the plea-withdrawal issue in the PCR motion.

12

*knowingly, intelligently, and voluntarily* made and entered, I dissent.

¶23.    During a January 2018 Tate County, Mississippi grand jury session, Soweto Ronnell Love and Porcha Latoya Knox were jointly charged in a six-count indictment for the following offenses: Count I: conspiracy to obtain a controlled substance by fraud; Count II: attempting to obtain 150 dosage units of Oxycodone (30mg) by fraud between October 24 and 27, 2017; Count III: obtaining 150 dosage units of Oxycodone (30mg) by fraud on or about September 23, 2017; Count IV: obtaining 120 dosage units of Oxycodone 30mg by fraud on or about August 24, 2017; Count V: possession of a fraudulent or forged prescription of Valerie Kershaw-Berry, Family Nurse Practitioner, on or about October 27, 2017; and Count VI: possession of a fraudulent or forged prescription signed by Johnathan Ellichman, M.D. The indictment was filed with the circuit clerk on January 24, 2018.

¶24.    On August 29, 2018, the State filed a motion to amend the indictment to charge Love as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2014) and as a recidivist pursuant to Mississippi Code Annotated section 41-29-147 (Rev. 2018). This motion was granted by an order on September 5, 2018.

¶25.    On August 29, 2019, Love, along with his attorney, Stacey A. Spriggs, executed a "Petition to Enter Plea of Guilty" to Counts II and III of the indictment.[5] However, nowhere in the petition to enter a plea of guilty does Love acknowledge that he is pleading guilty as

_____

[5] This petition was not filed with the circuit clerk until September 17, 2019, the day after Love entered his pleas of guilty.

13

a habitual offender.[6] The petition included a statement about the maximum and minimum sentences for the offenses to which Love was to plead guilty and noted that no "plea bargain" agreement had been reached concerning recommended sentences. In the petition, Love also acknowledged that he had been previously convicted of "possession with intent" and "possession of a controlled substance by fraud," but there was no indication in the petition that as a result of these prior felony convictions that he was voluntarily pleading guilty as a habitual offender.

¶26. According to the transcript, Love entered his pleas of guilty on September 16, 2019. During the hearing on Love's petition to enter pleas of guilty, he acknowledged that he was offering to plead guilty to "forged prescription, two counts." The State was asked to give the court "a factual basis for the charges against Mr. Love." During the State's recital of the factual basis, there was no mention that Love was pleading as a habitual offender, and the State did not recite any prior felony conviction to support a finding that Love was a habitual offender. In other words, the State failed to establish a factual basis to support the habitual offender portion of the amended indictment. At no point during the guilty plea hearing does the State or the trial judge mention the habitual offender portion of the amended indictment. Further, there is nothing in the guilty plea transcript to show that Love knowingly, intelligently, and voluntarily offered to enter his pleas of guilty as a habitual offender.

¶27. On October 26, 2020, Love appeared before the court and was sentenced to serve

---

[6] As noted above, the indictment was also amended to charge Love as a recidivist, which would have doubled the maximum and minimum penalties for the offenses to which Love was pleading guilty. However, there is no mention of this enhancement in the guilty plea petition, the guilty plea hearing, or the sentencing order.

terms of five years on each count in the custody of the Mississippi Department of Corrections, to run consecutively, both "as a 99-19-81 Habitual Offender." The "Sentence of the Court" filed on November 17, 2020, indicated that Love had pled guilty on September 16, 2019, on both Counts II and III, "as a 99-19-81 Habitual Offender as charged in the Indictment." However, there was apparently a sentencing hearing conducted on October 26, 2020, where the State put on proof of Love's habitual offender status.[7]

¶28.    On March 11, 2021, Love filed his PCR motion and challenged the voluntariness of his guilty pleas. He asserted that his guilty pleas were not "voluntarily, knowingly and intelligently entered" and that "the trial court failed to establish any factual basis to the offenses that Petitioner has been convicted of." In fact, in his motion, Love challenged the voluntariness of his pleas of guilty on numerous other grounds.

¶29.    By an order filed on August 27, 2021, the circuit court summarily dismissed Love's motion pursuant to Mississippi Code Annotated section 99-39-11 (Rev. 2015), finding that "it plainly appears from the face of the motion(s), any annexed exhibits [or the lack thereof], and the prior proceedings in the case that the movant is not entitled to any relief." While the circuit court addressed the issue of the voluntariness of Love's plea in its order, the court did not cite any evidence in the record to show that Love was expressly advised that he was pleading guilty as a habitual offender or to any evidence that Love acknowledged that he intended to enter his guilty pleas as a habitual offender.

---

[7] The circuit court did not include the transcript of the sentencing hearing as a document it relied upon in summarily dismissing Love's PCR motion; therefore, that document is not properly before this Court on appeal. *See* M.R.C.P. 54(c).

15

¶30.   In *Roberts v. State*, 346 So. 3d 929, 933 (¶15) (Miss. Ct. App. 2022), this Court stated:

> A guilty plea must be made, "voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences" to be satisfactory. *Hunt v. State*, 99 So. 3d 269, 271 (¶8) (Miss. Ct. App. 2012) (internal quotation mark omitted). "A guilty plea is voluntarily and intelligently made if the circuit court advised the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea." *Collins v. State*, 270 So. 3d 63, 66 (¶8) (Miss. Ct. App. 2018) (internal quotation marks omitted).

Mississippi Rule of Criminal Procedure 15.3(c) provides:

> (c) Voluntariness. Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea is not voluntary if induced by fear, violence, deception, or improper inducements. A showing that the plea of guilty was voluntarily and intelligently made must appear in the record.

Rule 15.3(d) provides, in part:

> (d) Advice to the Defendant. When the defendant is arraigned and wishes to plead guilty to a felony or a misdemeanor with the possibility of incarceration, **the defendant may be placed under oath and it is the duty of the trial court to address the defendant personally in open court to inquire and determine**:
>
> . . . .
>
> > (2) **That the accused understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law**;

(Emphasis added).  The comment to this portion of the rule states:

> Section (d) prescribes the advice that the court must give to the defendant as a prerequisite to the acceptance of a guilty plea and requires the court to determine that the defendant understands the sentencing implications of that plea.

¶31.   Neither the petition to enter a plea of guilty nor the transcript of the guilty plea hearing shows that Love intended to enter his guilty pleas as a habitual offender. Clearly he was not

16

made aware during the plea hearing that as a result of his guilty pleas, he would be sentenced as a habitual offender and would be required to serve whatever sentences he received day-for-day, without parole eligibility.

¶32.  In a similar case where a defendant entered a plea of guilty after the indictment was amended to charge him as a habitual offender, this Court noted in *Ramsey v. State*, 290 So. 3d 1281, 1285 (¶11) (Miss. Ct. App. 2020):

> Ramsey was not originally indicted as a habitual offender, but the State filed a motion to amend the indictment to reflect his habitual offender status. The State's motion identified two specific prior felony convictions—a 1999 conviction in West Virginia and a 2014 conviction in Pike County—for which Ramsey had been sentenced to more than one year in prison. Ramsey did not oppose the motion, and the circuit court granted it. At Ramsey's plea hearing, the judge explained that the indictment had been amended to include habitual offender status, and Ramsey stated that he understood. Ramsey's plea petition also stated that he would plead guilty as a habitual offender. When a defendant admits to prior criminal convictions as part of a guilty plea, those admissions are "sufficient to permit a finding of habitual status." *Atkinson v. State*, 215 So. 3d 1002, 1005 (¶11) (Miss. Ct. App. 2017) (quoting *Sanders v. State*, 786 So. 2d 1078, 1082 (¶14) (Miss. Ct. App. 2001)). Therefore, Ramsey's indictment was properly amended, and the court properly sentenced Ramsey as a habitual offender.

In the present case, the circuit court took no action of record to confirm that Love knew that the indictment had been amended to charge him as a habitual offender, to confirm that Love intended to plead guilty as a habitual offender, and to confirm that he knew the consequences of entering such a plea in this case.[8]

---

[8] The majority argues that certain boilerplate language contained in the guilty plea petition fulfills this requirement. While such language informed Love that he may face enhanced sentences in the future, there is nothing in this standardize language that informs Love of the consequences of his plea in the present case, i.e., that he would be sentenced to the maximum punishment for the offenses without eligibility for parole.

¶33. Based upon the record before us, I would find that the circuit court erred by finding that "it plainly appears from the face of the motion(s), any annexed exhibits [or the lack thereof], and the prior proceedings in the case that the movant is not entitled to any relief." I would reverse the circuit court's dismissal of Love's PCR motion and remand this cause to the trial court for an evidentiary hearing only as to whether Love *knowingly, intelligently, and voluntarily* entered his guilty pleas ***as a habitual offender***.

**WILSON, P.J., WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**