# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-01060-COA

**LOUIS EDWARD CHANDLER**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/06/2020 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LOUIS EDWARD CHANDLER (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 08/23/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1.     On January 10, 2017, Louis Edward Chandler pled guilty in the Clay County Circuit Court to two counts of aggravated DUI. On January 17, 2017, he was sentenced to a term of seven years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended and two years to serve, for count one's conviction and fifteen years, with five years suspended and ten years to serve, for count two's conviction. The sentences were ordered to run consecutively. He was also ordered to serve a term of five years of post-release supervision for each conviction. He was ordered to pay court costs in both counts and, in count two, he was ordered to pay a fine in the amount of $500 and restitution in the amount of $360,000. On January 21, 2020, Chandler filed a pro se motion for post-conviction

relief (PCR), which the circuit court dismissed without a hearing by an order entered on August 6, 2020.

## FACTS AND PROCEDURAL HISTORY

¶2.	As a result of his guilty pleas, Chandler was convicted of two counts of aggravated DUI that arose from a head-on vehicle collision. The factual basis offered by the State during the plea proceedings showed that on the night of April 25, 2014, Chandler negligently drove his vehicle northbound in a southbound lane of travel. He collided with the vehicle driven by Joanna K. Hardwick.[1] Maurice Hall was a passenger in the Hardwick vehicle. Hardwick and Hall suffered "severe injuries to their legs and other organs" as a result of the accident. The State said its proof would show that Hardwick and Hall suffered injuries "that's necessary in the statute." Chandler was found to have been driving with a blood-alcohol concentration (BAC) of 0.19%, which the State contends showed that he was "under the influence" at the time of the collision. The trial court asked Chandler, "Is that what happened, Mr. Chandler?" Chandler responded, "Those facts are true." As a result of his guilty pleas, Chandler was found guilty and sentenced as stated above.

¶3.	In his PCR motion, Chandler sought to have all charges against him "dropped" and asked that he be released from incarceration immediately. In the alternative, Chandler asked for a new trial in a new venue or "review for a more appropriately judicial sentence" or that "the restitution judgment against him be vacated." The trial court found these claims were without merit and dismissed the motion without a hearing. Chandler appeals from this order.

---

[1] Hardwick's name apparently became Joanna Malone, but we will identify her as Hardwick to be consistent with the name in the indictment.

## STANDARD OF REVIEW

¶4.     In *Davis v. State*, 335 So. 3d 1108, 1110 (¶7) (Miss. Ct. App. 2022), this Court stated:

> When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review.

(Quoting *Hays v. State*, 282 So. 3d 714, 716-17 (¶5) (Miss. Ct. App. 2019)).

## ANALYSIS

¶5.     In his PCR motion, Chandler lists five grounds upon which he contends relief should be granted.[2] We will address these five grounds separately below. However, before setting out his grounds for relief, in the "Introduction" section of his PCR motion, Chandler seems to challenge the factual basis for his guilty pleas. In this section, he raises the following issues:

1.     He did not think his operation of his vehicle was impaired by his consumption of alcohol.

2.     He implies that the cause of the collision was a "poorly designed, poorly illuminated and dangerous" intersection of Highway 82 and Highway 45 Alt., which was under construction.

3.     Both victims had illegal narcotics in their blood test reports.

4.     The victims' injuries did not qualify as "maiming" under the statute.

5.     MHP officers gave false testimony.

---

[2] On appeal, Chandler has raised several new arguments in support of his claims for relief that were not set out in his PCR motion before the circuit court. He has also attached to his appellate brief documents that were not a part of the record before the circuit court. We will not consider arguments or documents raised for the first time on appeal. *Jones v. State*, 334 So. 3d 196, 197 (¶6) (Miss. Ct. App. 2022).

3

¶6. During the guilty plea proceeding, the State made a proffer of what its evidence would show if this matter had proceeded to trial. As stated above, the State advised the court that its proof would show, that at the time of the collision, Chandler was operating his vehicle negligently by driving his vehicle northbound in a southbound lane of travel. Chandler's BAC was 0.19% at the time of the collision. The State would have shown at trial that Chandler's operation of his vehicle caused the head-on collision with the vehicle driven by Hardwick. The collision caused significant injuries to Hardwick and her passenger Hall. The State advised the court that its proof would show that the victims' injuries were sufficient to meet the elements of the statute.

¶7. Had this matter gone to trial, a jury would have been called upon to determine whether the State had proved beyond a reasonable doubt each of the elements of aggravated DUI.[3] All the questions and issues raised by Chandler could have been presented to a jury for determination. However, Chandler chose to enter pleas of guilty. By admitting that the facts proffered by the State were true, Chandler waived his right to challenge the sufficiency of the State's proof or to have these issues decided by a jury. In *Wright v. State*, 271 So. 3d 560, 563 (¶10) (Miss. Ct. App. 2018), this Court explained:

> [T]his Court has held that "a valid guilty plea waives the right to challenge the sufficiency of the State's evidence." *Grissom v. State*, 66 So. 3d 1280, 1282 (¶6) (Miss. Ct. App. 2011).

After a review of the record, including the petition to enter a guilty plea and the transcript from the guilty-plea hearing, we find that Chandler's guilty pleas were freely, voluntarily,

---

[3] After being instructed by the court, a jury would have determined whether the injuries suffered by Hardwick and Hall were sufficient under the statute.

knowingly, and intelligently made and entered and that each had a factual basis. Accordingly, Chandler's valid guilty pleas waived his right to challenge his convictions as to these unnumbered allegations or claims for relief. In any event, these claims are without merit.

¶8.     We now move to the numbered grounds for relief Chandler presented to the circuit court in his PCR motion:

> I.     **"Denial of due process in violation of the Fifth, Sixth, Seventh and Section 1 of the Fourteenth Amendments to the U. S. Constitution by improper commingling of criminal and civil proceedings."**[4]

¶9.     In his PCR motion, Chandler alleged that there was a "conspiracy" to falsely implicate "The Pony"[5] in order to "maximize the potential financial awards resulting from this accident." As evidence of his theory, Chandler contends that two Mississippi Highway Patrol officers, who worked the scene of the accident, testified falsely during the hearing on his motion to suppress the BAC results. According to Chandler,[6] the officers testified during that hearing that Chandler "confessed" to being at The Pony and that they remember Chandler wearing a "pink bracelet or wristband." Chandler also challenges the officers' testimony that he was given three different field sobriety tests. While Chandler brought up this issue concerning the officers' testimony on the morning of trial, there was no mention of The Pony

---

[4] Hardwick, one of the victims, sued Chandler and others in the Clay County Circuit Court for damages resulting from the accident in the case styled "Joanna Hardwick Malone v. Louis E. Chandler, Charles G. Westlund, Jr., MEC Inc. d/b/a The Pony, and John Doe(s) A, B and C," bearing civil action number 15-CV-00044. This suit was pending before the same circuit judge as the underlying criminal charges.

[5] "The Pony" is a nightclub located in the general vicinity of the site of the collision.

[6] The transcript of the hearing of the motion to suppress is not a part of the appellate record.

during the guilty plea hearing that afternoon. The factual basis tendered by the State included proof that Chandler had a BAC of 0.19% at the time of the collision, but there was no mention of where he may have consumed the alcohol. There was also no mention of the pending civil lawsuit during Chandler's guilty plea hearing. While Chandler contends that the officers testified falsely, as noted above, that would have been for a jury's determination had this matter proceeded to trial.

¶10.    Chandler then points to certain comments the circuit judge made during the criminal proceedings concerning the civil lawsuit and to the fact that the circuit judge signed the Final Judgment of Dismissal with Prejudice.[7] Those comments were made by the circuit judge during the sentencing hearing as he considered restitution and how restitution was to be paid in light of the amount of damages and the pending civil lawsuit. The judge's comments at that time show that he was aware of the civil lawsuit, because he noted that one of the civil lawsuit attorneys was present at sentencing. There is no evidence that any contested issue in the civil lawsuit had been brought before the circuit judge for his decision, prior to Chandler's guilty pleas and sentencing. Chandler failed to show that the pending civil lawsuit was "improperly commingled" with his criminal case or that it had any impact upon the voluntariness of his guilty pleas to the charges in the underlying criminal case.

¶11.    Chandler further alleges that his attorney in the civil lawsuit advised him, prior to his guilty pleas, that the plaintiffs would dismiss him from the lawsuit if Chandler would admit

---

[7] Chandler attached a copy of this order to his PCR motion. That order was signed on March 28, 2018, over a year after Chandler's guilty pleas and sentence. That order noted that the cause of action against The Pony was still pending, again, over a year after the conclusion of the criminal proceeding.

that he had been at The Pony. Chandler refused, but he states that he was later advised, after his incarceration, that The Pony had settled the case for $300,000. He maintains that The Pony had "no liability in regards to my accident." Chandler attached to his PCR motion a copy of an "Absolute Release With Covenants,"[8] which shows that his insurance company settled the civil lawsuit against him for a payment of $100,000. In his PCR motion, Chandler fails to show how settlement negotiations by his attorney for the civil lawsuit had any impact upon the voluntariness of his guilty pleas.

¶12.    Many of Chandler's arguments are without support in the appellate record. He draws inferences from facts that are not supported by the record. He speculates as to the cause and effect of statements that were made at different points in the proceedings. Much of his argument is admittedly based upon his own "opinion" concerning these matters. In *Home Solutions of Mississippi LLC v. Ridge*, 301 So. 3d 670, 676 (¶23) (Miss. Ct. App. 2020), we held:

> In the absence of meaningful argument or citation of authority, the appellate court will not consider an assignment of error. *Patton v. State*, 109 So. 3d 66, 75 (¶22) (Miss. 2012); *see also Russell Real Prop. Servs. LLC v. State*, 200 So. 3d 426, 430 (¶10) (Miss. 2016) (finding assertions of error not supported by citation or authority to be abandoned); *Flowers v. Boolos* (*In re Estate of Smith*), 204 So. 3d 291, 313 (¶49) (Miss. 2016) ("It is the duty of an appellant to provide authority in support of an assignment of error, and the failure to do so is considered abandonment of the issue; thereby making the issue procedurally barred for appellate review.").

Chandler has not supported this argument with any citation of authority. He does not explain how any of the issues he alleges, even if true, rise to the level of a constitutional violation in

---

[8] This document was attached to Chandler's PCR motion, but was executed over a year after his convictions.

7

the underlying criminal case. Most of his complaints seem to be directed toward his opinion that The Pony had no liability in the civil lawsuit. In any event, it appears that Chandler was represented by separate, retained counsel in the criminal and civil cases. He has cited no authority to support his contention that it was improper for the circuit judge to preside over both cases. Had Chandler believed there to be a conflict, then his attorney, in either case, could have moved for recusal.[9]

¶13.    Allegations of judicial misconduct were also made in *Robinson v. Burton*, 49 So. 3d 660, 667 (¶¶27-28) (Miss. Ct. App. 2010), and this Court explained:

> Our supreme court has held that failure to move to recuse or to contemporaneously object to alleged impropriety procedurally bars this issue from our review. *Wal-Mart Stores, Inc. v. Frierson*, 818 So. 2d 1135, 1141 (¶10) (Miss. 2002). In *Frierson*, the supreme court reviewed a litigant's later claims of judicial impropriety for plain error. *Id*. at (¶¶10-12). The supreme court relied on the well-established rule that "if no contemporaneous objection is made, the error, if any, is waived." *Id*. (quoting *Smith v. State*, 797 So. 2d 854, 856 (¶7) (Miss. 2001)). Other jurisdictions have applied this same rationale and held that claims of judicial impropriety or racial bias not properly raised in the trial court are procedurally barred. *See Harbin v. Roberts*, 305 Ga. App. 107, 699 S.E. 2d 36, 38-39 (2010); *In re Key*, 182 N.C. App. 714, 643 S.E.2d 452, 456 (2007); *State v. Alfatlawi*, 153 P.3d 804, 820 (Utah Ct. App. 2006) (racial bias); *People v. Moniz*, 2003 WL 21508430, unpublished opinion per curiam of the Mich. Court of Appeals, issued July 1, 2003 (Docket No. 234431) (racial bias).
>
> While procedural bars may apply, we proceed to determine whether the record shows error affecting Robinson's substantial rights. Because of the nature and seriousness of Robinson's allegations and to ensure there has been no miscarriage of justice, we review for plain error. See *Frierson*, 818 So. 2d at 1141 (¶¶10-12). In conducting our review, we are mindful that the supreme court has clearly explained there is a presumption that the "trial judge is qualified and unbiased, and this presumption may only be overcome by

---

[9] See Mississippi Rule of Civil Procedure 16A and, in effect at the time before July 1, 2017, Uniform Rule of Circuit and County Court Practice 1.15.

8

evidence which produces a reasonable doubt about the validity of the presumption." *Payton v. State*, 897 So. 2d 921, 943 (¶72) (Miss. 2003). The scope of this inquiry focuses on whether a "reasonable person, knowing all the facts and circumstances, would harbor doubts about [the trial judge's] impartiality." *Frierson*, 818 So. 2d at 1142 (¶¶12, 15) (quoting *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.*, 759 So. 2d 1203, 1209 (¶21) (Miss. 2000)).

In the present case, there was no motion for recusal and no contemporaneous objection to any action by the circuit judge in the underlying criminal cause. We find this issue to be procedurally barred. In any event, we have reviewed the transcript of the guilty plea and sentencing hearings for plain error. We find no error by the circuit judge that adversely affected Chandler's substantial rights or that would cause a reasonable person to question the circuit judge's impartiality.

### II. "Denial of due process in violation of the Sixth Amendment to the U.S. Constitution by denial of effective assistance of counsel."

¶14. In his less-than-one-page argument in support of this allegation of ineffective assistance of counsel, Chandler states that his attorney

> had a conflict of interest and betrayed his duty of undivided loyalty and confidentiality and failed to exert his best efforts to wholeheartedly advance [Chandler's] legitimate interest with fidelity and diligence[,] forsook his duty to provide [Chandler] with credible and vigorous defense of the charges against him and forsook his sworn duty to protect the law and to protect his client's interest.

Chandler does not explain in his PCR motion any specifics as to what wrongful acts his attorney committed or what actions he failed to take in Chandler's defense. Chandler does not attach a separate affidavit to support his allegation in this regard. All that the circuit court had before it were the allegations contained in the PCR motion.

9

¶15.    In *Galloway v. State*, 298 So. 3d 966, 974-75 (¶¶43-44) (Miss. 2020), the supreme

court explained:

> Conflict-of-interest claims involving attorneys in criminal cases are a species
> of ineffective assistance of counsel under the Sixth Amendment. *Strickland* [*v.*
> *Washington*], 466 U.S. [668], 688, 104 S. Ct. 2052 [(1984)] ("Counsel's
> function is to assist the defendant, and hence counsel owes the client a duty of
> loyalty, a duty to avoid conflicts of interest."). Such claims are evaluated under
> one of two separate standards: the *Strickland* standard or the standard from
> *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708 [(1980)]. *Crawford v. State*,
> 192 So. 3d 905, 917-18 (Miss. 2015) (citing *Strickland*, 466 U.S. at 687-92,
> 104 S.Ct. 2052).
>
> The *Strickland* standard requires a showing of deficient performance that
> prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. The
> *Cuyler* standard relieves the burden of showing prejudice when a claimant can
> show that "an actual conflict of interest adversely affected his lawyer's
> performance." *Id*. at 692, 104 S. Ct. 2052 (internal quotation marks omitted)
> (quoting *Cuyler*, 446 U.S. at 350, 100 S. Ct. 1708). "Prejudice is presumed
> only if the defendant demonstrates that counsel 'actively represented
> conflicting interests' and that 'an actual conflict of interest adversely affected
> his lawyer's performance.'" *Id*. (quoting *Cuyler*, 446 U.S. at 350, 100 S. Ct.
> 1708).

Chandler provides nothing to show that "an actual conflict of interest adversely affected his

lawyer's performance" in the underlying criminal case. Accordingly, Chandler has not met

the *Cuyler* standard.

¶16.    To the extent Chandler's claim can be understood to allege that his counsel was guilty

of "deficient performance [that] prejudiced his defense," this Court held in *Willis v. State*,

321 So. 3d 584, 591 (¶22) (Miss. Ct. App. 2021), that

> [t]o prove ineffective assistance of counsel, Willis must show that (1) "his
> defense counsel's performance was deficient," and (2) "the deficient
> performance prejudiced his defense." *Hutto v. State*, 286 So. 3d 653, 666 (¶55)
> (Miss. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "In
> the context of guilty pleas, this means the defendant must show that, were it

10

not for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. State*, 60 So. 3d 824, 827 (¶5) (Miss. Ct. App. 2011) (quoting *Burrough v. State*, 9 So. 3d 368, 375 (¶22) (Miss. 2009)). Willis bears the burden of proof. *Webster v. State*, 152 So. 3d 1200, 1203 (¶7) (Miss. Ct. App. 2014). He was required to plead claims of ineffective assistance with specificity, and the claims must be supported by affidavits other than his own. *Id*. at (¶8).

Because Chandler did not plead this claim with "specificity" and provided no affidavits in support of his claim, this issue is without merit.

> **III.** **"Denial of due process in violation of [the] Fifth, Sixth, and Section 1 of the Fourteenth Amendments to the U. S. Constitution by improper judicial instructions to the Petitioner/Defendant**."

¶17. In support of this claim, Chandler points to comments by the circuit judge that do not appear in the record on appeal. Chandler contends that he fired his retained attorney and told the circuit judge that it was his "desire to go to trial and represent himself." Chandler contends that the circuit judge advised him against representing himself at trial. It is unclear when Chandler alleges this occurred.

¶18. Based upon facts contained in the transcript, a motion to suppress was heard on January 9, 2017, the day before the trial was scheduled to begin. There is, however, no transcript from that hearing in the appellate record. There are two transcripts from the day Chandler's case was scheduled to go to trial. In the first transcript, the court notes that Chandler's attorney had advised the court that there was something Chandler wished to bring to the attention of the court. Chandler's statement to the court at that time was that he disagreed with the testimony of the law enforcement officers during the hearing on the motion to suppress and that he had never been to The Pony. While Chandler was addressing

the court he said, among other things, "[A]nd, I mean, I'm willing to represent myself." The circuit judge advised him that he had that right. Chandler further stated, "But I feel like the jury, you, and everybody needs to see the whole facts of the case. And for whatever reason, some of the testimony yesterday was false." The judge told Chandler that he had the right to go to trial and that his trial would begin that afternoon. The circuit judge made the comment, "[Y]ou have an excellent lawyer that you've hired." Chandler responded that he had no reason to dispute that. There was no indication during that proceeding that Chandler had fired his attorney or did not wish to go to trial represented by that attorney. Further, under oath during the guilty plea proceeding, Chandler acknowledged his satisfaction with his attorney.

¶19. In any event, had Chandler advised the court that he wished to fire his retained attorney and proceed to trial representing himself, the circuit judge would have been required to advise Chandler of certain matters set forth in Uniform Rule of Circuit and County Court Practice 8.05. This would include, in part, that

3. The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct himself within the same rules as an attorney, that these rules are not simple and that without legal advice his ability to defend himself will be hampered.

4. The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.

¶20. In *James v. State*, 266 So. 3d 1029, 1032 (¶8) (Miss. Ct. App. 2018), this Court described Chandler's burden on appeal:

"[I]t is the responsibility of the appellant to designate the record pursuant to Rule 10(b) of the Mississippi Rules of Appellate Procedure in a manner sufficient to allow this Court to review the appellant's issues." *Austin v. State*,

971 So. 2d 1286, 1287 n.1 (Miss. Ct. App. 2008). "In the absence of anything in the record to the contrary, we must presume that the trial court acted properly." *Id*.

It was Chandler's responsibility to provide a record sufficient to review this issue. Based upon the above, we presume that the judge acted properly in advising Chandler concerning self-representation.

**IV.** **"Abuse of judicial discretion in imposing excessively harsh sentencing in violation of the Eighth Amendment to the U.S. Constitution."**

¶21. In his PCR motion, Chandler also contends that his thirty-two-year sentence for a first offense that did not result in death, maiming, or significant long-term injuries shocks the conscious. He contends that the sentence imposed is evidence of judicial prejudice. Again, Chandler presented no meaningful argument in support of this issue and cited no authority in support of this claim before the circuit court.

¶22. In considering whether sentences violate the Eighth Amendment, this Court said in *Harris v. State*, 311 So. 3d 638, 662 (¶67) (Miss. Ct. App. 2020):

> However, as our supreme court recently addressed, "*Solem*[10] must now be viewed in the light of *Harmelin v. Michigan*, 501 U.S. 957 (1991)." *Nash v. State*, 293 So. 3d 265, 269 (¶13) (Miss. 2020) (other citation omitted). "The controlling opinion in *Harmelin* concluded that the Eighth Amendment contains a narrow proportionality principle that does not require strict proportionality between a crime and sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." *Id*. (internal quotation marks omitted) (quoting *Graham v. Florida*, 560 U.S. 48, 59-60 (2010)). Therefore, in determining whether "a particular sentence is grossly disproportionate, a court must first compare the gravity of the offense to the severity of the sentence." *Id*. It is only the exceedingly "rare case" where "'this threshold comparison leads to an inference of gross disproportionality' should

---

[10] *Solem v. Helm*, 463 U.S. 277 (1983).

the court 'then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions.'" *Id*. (quoting *Graham*, 560 U.S. at 60).

Chandler failed to establish any inference of gross disproportionality in this case. The maximum sentence for aggravated DUI is twenty-five years in the custody of the MDOC. Miss. Code Ann. § 63-11-30(5) (Rev. 2013). Chandler was sentenced to a term of seven years in the custody of the MDOC, with five years suspended and two years to serve, for count one's conviction and fifteen years, with five years suspended and ten years to serve, for count two's conviction. Both sentences were well below the statutory maximum sentence. Without more, these sentences do not raise an inference of gross disproportionality. This issue is without merit.

**V.      "Excessive imposition of restitution in violation of the Eighth Amendment to the U.S. Constitution and MCA 99-37-3.**"

¶23.    In Chandler's two-paragraph explanation of the basis for this claim for relief, he states that (1) "$360,000 restitution to Ms. [Hardwick] is excessive, not supported by the facts"; (2) violates the "limits imposed by MCA 99-37-3"; (3) is "further evidence of the improper commingling of the criminal and civil cases"; and (4) the transcript of Hardwick's testimony at sentencing "is suspiciously missing but referenced on page four of the court transcript." In any event, the supplemental record on appeal shows that prior to the dismissal of Chandler's PCR motion, the circuit court had entered an agreed order in the underlying criminal case, which basically set aside the prior order to pay $360,000 in restitution.

¶24.    Chandler first argues that the order that he pay Hardwick $360,000 in restitution is not supported by the record. However, in the transcript of the guilty plea and sentencing hearing,

14

the circuit judge mentions several times that the file in the criminal case contains a victim impact statement, which could have contained evidence of her medical expenses. Further, Hardwick testified at sentencing. The transcript of the sentencing hearing did not include her testimony. Chandler had the responsibility to make sure that the appellate record contained those matters necessary to decide the issues presented. *James*, 266 So. 3d at 1032 (¶8). Because Chandler failed to provide the needed information and because the restitution order has been set aside, we find this issue is without merit.

## CONCLUSION

¶25.    In his PCR motion, Chandler failed to support his claims for relief with sufficient arguments, citations of authority, and proof to warrant a hearing on his motion. In *Franks v. State*, 322 So. 3d 513, 518 (¶13) (Miss. Ct. App. 2021), this Court explained:

> The circuit court also determined that Franks did not "include any affidavit with his PCR motion, and he has failed to show any good cause why an affidavit could not be obtained." Mississippi Code Annotated section 99-39-9(1)(e) (Rev. 2015) states that a PCR motion shall contain the following:
>
> > A specific statement of the facts which are not within the petitioner's personal knowledge. The motion shall state how or by whom said facts will be proven. Affidavits of the witnesses who will testify and copies of documents or records that will be offered shall be attached to the motion. The affidavits of other persons and the copies of documents and records may be excused upon a showing, which shall be specifically detailed in the motion, of good cause why they cannot be obtained. This showing shall state what the petitioner has done to attempt to obtain the affidavits, records and documents, the production of which he requests the court to excuse.
>
> Thus, "[t]he movant must prove, through affidavits or otherwise, the potential existence of such facts that, if proven at the hearing, would

15

**entitle him to relief.**" *Magee v. State*, 270 So. 3d 225, 229 (¶14) (Miss. Ct. App. 2018) (quoting *Whatley v. State*, 123 So. 3d 461, 471 (¶33) (Miss. Ct. App. 2013)).

(Emphasis added). Chandler had the burden of proving by a preponderance of the evidence that he was entitled to post-conviction relief. *Kennedy v. State*, 181 So. 3d 299, 303 (¶15) (Miss. Ct. App. 2015). He had the obligation and opportunity to include with his PCR motion all evidence that he deemed relevant to show that he was entitled to post-conviction relief. *See Watson v. State*, 337 So. 3d 672, 676 (¶10) (Miss. Ct. App. 2021). In *Phillips v. State*, 332 So. 3d 408, 410 (¶4) (Miss. Ct. App. 2022), we set forth when a trial court may summarily dismiss a PCR motion:

> Mississippi Code Annotated section 99-39-11(2) (Rev. 2020) provides that the trial court may summarily dismiss a PCR motion "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief."

We find that it "plainly appears from the face of the motion, [the] annexed exhibits and the prior proceedings in the case," that Chandler was not entitled to any relief. Therefore, his PCR motion was properly dismissed without a hearing. While the circuit court summarily dismissed the PCR motion, finding the claims to be without merit, the circuit court's reasoning included that "there is no direct appeal from a plea of guilty." To the extent that the circuit court interpreted Chandler's PCR motion as an attempt to directly appeal his convictions and sentences, we disagree. The PCR motion was a proper vehicle for Chandler to challenge his guilty pleas and sentences. *See* Miss. Code Ann.§ 99-39-5 (Rev. 2020). In *Boone v. State*, 148 So. 3d 377, 379 (¶7) (Miss. Ct. App. 2014), this Court reasoned:

> "An appellate court may affirm a trial court's decision if the correct result is

reached, even if the trial court reached the result for the wrong reasons." *Harper v. State*, 102 So. 3d 1154, 1161 (¶21) (Miss. Ct. App. 2012) (quoting *Methodist Hosp. of Hattiesburg Inc. v. Richardson*, 909 So. 2d 1066, 1070 (¶7) (Miss. 2005)).

Thus we affirm the dismissal of Chandler's PCR motion but for a different reason than the circuit court.

¶26. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**